IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| JANET DE AMAT,<br><br>    Plaintiff,<br><br>vs.<br><br>UNITED NATURAL FOODS, INC., et al.,<br><br>    Defendant | Case No.: 8:21-cv-02323-PWG<br><br>FIRST AMENDED COMPLAINT |

## INTRODUCTION

1. Janet De Amat, Plaintiff, by and through her undersigned counsel, hereby sues United Natural Foods, Inc. and SuperValu, Inc. for violations of Title VII of the Civil Rights Act of 1964 and Civil Rights Act of 1991, *as amended*, 42 U.S.C. § 2000e-2(a), Section 1981, the Americans with Disabilities Act 42 U.S.C. §12101 et. seq. and ADA Amendments Act of 2008,. Defendant systematically harassed Plaintiff over nearly two years after she informed her employer of her illness in 2016. This included following her to and from the bathroom, demeaning her on numerous occasions by yelling and laughing at her, decrying her for frequent bathroom breaks after she submitted a note from her doctor stating that they were necessary, demanding Spanish not be spoken in the workplace and showing a video to that effect, and many other instances.

## PARTIES

2. Plaintiff, Janet De Amat, is a female citizen of the United States and is a resident of Montgomery County, Maryland. At all relevant times, Plaintiff was an employee of Defendants.

3. Defendants United Natural Foods, Inc., and SuperValu, Inc. own and operate grocery stores and whole sale food and meat distributors. United Natural Foods, Inc., owns or owned at the relevant time and operated the Shoppers Food & Pharmacy located in Germantown, Maryland, where Plaintiff worked and the events took place.

## JURISDICTION AND VENUE

4. The Court has jurisdiction over this action pursuant to Montgomery County Code § 27-9, Md. Code Ann., Cts. & Jud. Proc. § 4-402d, Md. Code Ann., and Cts. & Jud. Proc. § 1-501.

5. Plaintiff has been subject to discrimination under Montgomery County Code § 27-19.

6. Venue is proper in the Circuit Court for Montgomery County pursuant to Montgomery County Code § 27-19 and Md. Code Ann., Cts. & Jud. Proc. § 6-201 because Defendant engages in substantial business in Montgomery County, Maryland. Defendant has consistently employed more than 20 individuals and employed more than 20 individuals during the relevant period.

EXHAUSTION OF ADMINISTRATIVE REMEDIES AND CONDITIONS PRECEDENT

7. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 6 of this Complaint with the same force and effect as if set forth herein.

8. Plaintiff has exhausted administrative remedies and met all conditions precedent as to all claims in this complaint. Plaintiff filed a timely complaint with the EEOC on August 23, 2019 and an Amended Complaint on February 7, 2020. Plaintiff requested a right to sue letter when administrative remedies had been exhausted. A right to sue letter was issued May 12, 2021, and Plaintiff timely filed a complaint within 90 days of receipt.

STATEMENT OF CLAIM

9. Janet De Amat, Plaintiff, began working at Shoppers Food & Pharmacy, owned and operated by Defendants, on October 29, 2002. United Natural Foods, Inc., and SuperValu, Inc., both participate in the direct operations of Shoppers Food & Pharmacy, including the management and supervision of employees, as well as using Shoppers to provide products to customers across the national marketplace. Both UNFI and SuperValu employed De Amat during the relevant period. De Amat worked in multiple positions over the course of her employment. She is Peruvian and speaks fluent Spanish. She often talked about her heritage at work and spoke Spanish, initially, with coworkers and customers in front of her supervisor.

10. In 2016 De Amat became sick. She suffered from a severe stress disorder that substantially limited her ability to work, concentrate and think. She was also limited in her ability to lift at the time. De Amat informed her supervisor, Jim Spradbrow, and a representative in Human Resources of her condition and the symptoms that included sensitivity to stress, the need for frequent and sudden bathroom breaks, and limitations on her ability to lift. De Amat

requested the accommodation of a different schedule or position, and flexibility to take more bathroom breaks as needed. This information and her request were added to her file.

11. Soon after De Amat told her supervisor of her condition and requested the accommodations, Spradbrow began treating her much differently. It began in late 2016, continued through 2017, and got worse in 2018. De Amat performed her job well for more than a decade and was not subject to any significant disciplinary measures. Her job as cashier and front desk clerk required basic interactions with the public and the use of simple technology. De Amat was consistently personable and had lengthy experience in the industry.

12. The events are numerous. Spradbrow began following De Amat around the workplace and even to the bathroom. When she would leave her station to go to the bathroom he would appear and ask "Where are you going?" Spradbrow screamed at De Amat on multiple occasions for no or minor infractions while aware that she suffered from stress disorder and that it would exacerbate her condition. He screamed during one event when he alleged that De Amat took more than 15 minutes on break. He demanded that she speak to the manager after second break. When De Amat pushed back on one occasion, suggesting that Spradbrow review the camera to determine if she had made an infraction, he again yelled at her. Spadbrow did not follow employees without disabilities, nor yell at or otherwise harass them. Management knew or should have known that De Amat was being harassed.

13. Spradbrow also altered her work conditions and treated her differently from other employees. De Amat had previously informed Spradbrow that she needed to work as many hours on as few days as possible to facilitate child care. Spradbrow, after learning of De Amat's condition and requests for accommodation, altered her schedule to spread her hours over more days. De Amat did not have a uniform t-shirt on one day. A girl with a different national origin (Caucasian) similarly did not have her uniform t-shirt. The other employee was not reproached nor punished. Spradbrow not only yelled at De Amat, but said he would send her home. The other employee did not have a disability and did not request an accommodation.

14. When De Amat retrieved what she believed would be a satisfactory item to wear and returned she found Spradbrow laughing at her. De Amat began crying and said "Please, just let me work." Spradbrow, annoyed and dismissive, said "you look fine, you can work" then angrily said "do whatever you have to do." De Amat said "I'm sick." She went to the bathroom. When

she finished, Spradbrow got angry, again, reproached her for using the bathroom at that time and De Amat, confused, said "You told me to do what I have to do."

15. On De Amat's last day, and the day before Mother's Day, she was off work doing her personal grocery shopping and speaking on the phone with her family regarding a private event on the weekend. Spradbrow noticed that De Amat was in the store and called another employee to ask what time she had clocked out and asked if she was shopping during work hours.

16. Prior to this day, on multiple occasions, Spradbrow had told employees, including De Amat, not to speak Spanish in the workplace. Employees were also required to watch a video that stated that employees who speak Spanish should not do so with coworkers or customers.

17. De Amat was at the deli counter speaking on the phone on or about May 11, 2019, and a customer who also spoke Spanish approached and overheard the conversation. The customer, who had a previous relationship with Spradbrow, told him that De Amat had used a Spanish curse word.

18. De Amat was subsequently removed from the schedule subject to an investigation. When the "investigation" was complete, De Amat met with management on or about June 17, 2019, who informed her that, in order to return to work, she would have to sign an agreement that included a provision stating she could be fired for any minor infraction, had to forfeit her 109 vacation hours, and must waive all claims or possible claims against her employer or agents of her employer. Management was aware of her request for accommodation and condition.

19. De Amat did not agree to the terms and filed a complaint with the Equal Employment Opportunities Commission on August 23, 2019, and an Amended Complaint on February 7, 2020. A Right to Sue was issued on May 12, 2021. Plaintiff filed the present complaint within 90 days of receiving the Right to Sue.

20. De Amat suffered in a hostile work environment for nearly two years, and has suffered since. After the events with her employer and as a result of those events she suffered a severe stress reaction that made her unable to work and caused daily emotional distress. This has impacted her ability to interact with family and friends and caused long term mental anguish along with lost wages and benefits.

## COUNT I

Disability Discrimination

Americans with disabilities Act 42 U.S.C. §12101 et. seq. and ADA Amendments Act of 2008

21. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 20 of this Complaint with the same force and effect as if set forth herein.

22. Plaintiff has a disability of severe stress disorder and Post Traumatic Stress Disorder.

23. Defendant was aware of Plaintiff's disability.

24. Plaintiff's disability of severe stress disorder and Post Traumatic Stress Disorder are mental impairments that substantially limit the major life activities of working, concentrating, and thinking.

25. Plaintiff was qualified for the position and able to perform the essential functions of the job.

26. Defendant harassed and disparaged Plaintiff because of her disability. Defendant constructively discharged Plaintiff because of her disability.

27. Defendant treated Plaintiff disparately from employees who did not have disabilities.

28. Defendant did not exercise reasonable care to prevent discrimination on the basis of disability, and did not correct discriminatory behavior.

29. Defendant's unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff's right to be free from discrimination based on disability.

30. As a direct, legal and proximate result of the discrimination, Plaintiff has sustained, and will continue to sustain, economic, physical, and emotional injuries, resulting in damages in an amount to be proven at trial.

COUNT II

National Origin Discrimination

Title VII of the Civil Rights Act of 1964, as amended

42 U.S.C. § 2000e-2(a)

31. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 30 of this Complaint with the same force and effect as if set forth herein.

32. Defendant is an employer as defined in the statute and, at all relevant times, employed Plaintiff.

33. Plaintiff is Peruvian and a member of a protected class.

34. Defendant discriminated against Plaintiff by treating her disparately because of her national origin in reprimands for conduct and work conditions.

35. Management knew, or should have known, or engaged in the discriminatory conduct.

36. Defendants did not exercise reasonable care to prevent discrimination on the basis of national origin, and did not correct discriminatory behavior.

37. As a direct, legal and proximate result of the discrimination, Plaintiff has sustained, and will continue to sustain, economic and emotional injuries, resulting in damages in an amount to be proven at trial.

38. Defendants' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff's right to be free from discrimination based on national origin.

## COUNT III

### Retaliation

Americans with disabilities Act 42 U.S.C. §12101 et. seq. and ADA Amendments Act of 2008

39. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 38 of this Complaint with the same force and effect as if set forth herein.

40. Plaintiff engaged in protected activity when she requested reasonable accommodation for her disability.

41. Defendant was aware of the protected activity of requesting a reasonable accommodation.

42. Management knew, or should have known, or engaged in the retaliatory conduct.

43. Defendant retaliated against Plaintiff for engaging in the protected activity of requesting a reasonable accommodation.

44. As a direct, legal and proximate result of the retaliation, Plaintiff has sustained, and will continue to sustain, economic and emotional injuries, resulting in damages in an amount to be proven at trial.

## COUNT IV

### National Origin Discrimination

42 U.S.C. §1981

45. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 44 of this Complaint with the same force and effect as if set forth herein.

46. Defendant is an employer as defined in the statute and, at all relevant times, employed Plaintiff. Plaintiff had the contractual interest of employment with the Defendant, which was not equally upheld because of Plaintiff's national origin.

47. Plaintiff is Peruvian and a member of a protected class.

48. Defendant discriminated against Plaintiff by treating her disparately because of her national origin in reprimands for conduct and work conditions.

49. Management knew, or should have known, or engaged in the discriminatory conduct.

50. Defendants did not exercise reasonable care to prevent discrimination on the basis of national origin, and did not correct discriminatory behavior.

51. As a direct, legal and proximate result of the discrimination, Plaintiff has sustained, and will continue to sustain, economic and emotional injuries, resulting in damages in an amount to be proven at trial.

52. Defendants' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff's right to be free from discrimination based on national origin.

PRAYER FOR RELIEF

Wherefore, Plaintiff, Janet De Amat, prays this Honorable Court for Judgment against the Defendants, United Natural Foods, Inc. and SuperValu, Inc, in the amount of economic damages, compensatory damages, and punitive damages to be determined at trial, attorneys' fees, costs of this action, and/or injunctive relief, and any other relief this Honorable Court deems just and proper to award.

JURY DEMAND

Plaintiff demands a jury for all issues proper to be so tried.

Respectfully submitted,

Dated this 4th day of November, 2021

/s/ _____

Jason Shafer, Esq.
Bar No. 20172
Shafer Associates, LLC
230 N. Washington St.
Suite 200
Rockville, MD 20850